1

2

3

4

5

6

7

8                      IN THE UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10   FLORICA BACSI,

11            Plaintiff,                    No. CIV S-04-2456 PAN

12        vs.

13
     JO ANNE B. BARNHART,
14   Commissioner of Social Security,

15            Defendant.                    ORDER
     _____/
16

17            Plaintiff seeks judicial review of a final decision of the Commissioner of Social

18   Security ("Commissioner") denying an application for Supplemental Security Income ("SSI")

19   under Title XVI of the Social Security Act ("Act").  For the reasons discussed below, the court

20   will deny plaintiff's motion for summary judgment, grant plaintiff's motion for remand, and deny

21   the Commissioner's cross-motion for summary judgment.

22   /////

23   /////

24   /////

25   /////

26   /////

1    I.  Factual and Procedural Background

2                  In a decision dated April 27, 2004, the ALJ determined plaintiff was not disabled.[1]

3    The ALJ's decision became the final decision of the Commissioner when the Appeals Council

4    denied plaintiff's request for review.  The ALJ found plaintiff has severe impairments of back,

5    neck, and hip pain, and headaches, but that these impairments do not meet or medically equal a

6    listed impairment; plaintiff is not substantially credible; plaintiff has the residual functional

7    capacity to perform the physical exertion requirements of work except for performing prolonged

8    lifting in excess of 10 pounds and occasional lifting in excess of 20 pounds; plaintiff can perform

9    the full range of light work; and plaintiff is not disabled.  Administrative Transcript ("AT") 20.

10   _____

11         [1] Disability Insurance Benefits are paid to disabled persons who have contributed to the
     Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income ("SSI") is paid
12   to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Under both provisions, disability
     is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a
13   medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) &
     1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R.
14   §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The
     following summarizes the sequential evaluation:
15
                  Step one:  Is the claimant engaging in substantial gainful
16         activity?  If so, the claimant is found not disabled.  If not, proceed
           to step two.
17                Step two:  Does the claimant have a "severe" impairment?
           If so, proceed to step three.  If not, then a finding of not disabled is
18         appropriate.
                  Step three:  Does the claimant's impairment or combination
19         of impairments meet or equal an impairment listed in 20 C.F.R., Pt.
           404, Subpt. P, App.1?  If so, the claimant is automatically
20         determined disabled.  If not, proceed to step four.
                  Step four:  Is the claimant capable of performing his past
21         work?  If so, the claimant is not disabled.  If not, proceed to step
           five.
22                Step five:  Does the claimant have the residual functional
           capacity to perform any other work?  If so, the claimant is not
23         disabled.  If not, the claimant is disabled.  _____

24   Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

25         The claimant bears the burden of proof in the first four steps of the sequential evaluation
     process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential
26   evaluation process proceeds to step five.  Id.

Plaintiff contends that the ALJ erred in his determination that plaintiff was not credible; that the ALJ improperly weighing the medical opinion of plaintiff's treating physician; and that the ALJ did not consider the combination of plaintiff's impairments.

II.  Standard of Review

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)).  Substantial evidence means more than a mere scintilla of evidence, but less than a preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938)).  The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

III.  Analysis

a.  The ALJ Properly Evaluated Plaintiff's Credibility.

The ALJ determines whether a disability applicant is credible, and the court defers

3

1   to the ALJ's discretion if the ALJ used the proper process and provided proper reasons.  See, e.g.,

2   Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make

3   an explicit credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad

4   v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be

5   supported by "a specific, cogent reason for the disbelief").

6           In evaluating whether subjective complaints are credible, the ALJ should first

7   consider objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947

8   F.2d 341, 344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment,

9   the ALJ then may consider the nature of the symptoms alleged, including aggravating factors,

10  medication, treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider:

11  (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent

12  testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

13  prescribed course of treatment, and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d

14  1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR

15  55406-01; SSR 88-13.  Work records, physician and third party testimony about nature, severity

16  and effect of symptoms, and inconsistencies between testimony and conduct also may be

17  relevant.  Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A failure

18  to seek treatment for an allegedly debilitating medical problem may be a valid consideration by

19  the ALJ in determining whether the alleged associated pain is not a significant nonexertional

20  impairment.  See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).   The ALJ

21  may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453,

22  1458 (9th Cir. 1989), which cannot substitute for medical diagnosis.  Marcia v. Sullivan, 900

23  F.2d 172, 177 n.6 (9th Cir. 1990).  "Without affirmative evidence showing that the claimant is

24  malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear

25  and convincing."  Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.

26  1999).

4

1    Plaintiff complained of daily and constant pain in her lower back, hips, and knees,

2  as well as migraine headaches that began following the C-section birth of her 10th child.  AT 70,

3  90, 171.  According to plaintiff, the pain forced her to spend most of her day lying down, and

4  prevented her from sitting very long or walking very far without the assistance of a walker.  AT

5  70, 90.  A third-party witness during the hearing testified that she and other friends from

6  plaintiff's church, as well as plaintiff's husband and older children, attend to many of the

7  household chores, AT 185, and that plaintiff spends most her time at home, "boss[ing] everyone

8  around from her chair," AT 186.

9    The ALJ found that plaintiff's complaints were "not substantially credible."  AT

10  18.  As the basis for this conclusion, the ALJ stated that the medical evidence did not support the

11  severity of her symptoms.  Id.  Furthermore, allegations of fraud cast doubt upon plaintiff's

12  credibility.  Id.

13    The ALJ noted that the medical records in the case failed to indicate a degree of

14  impairment consistent with the complaints of the plaintiff.  Id.  The lack of objective clinical

15  findings, radiological evidence, and the conclusions of two doctors contradicted plaintiff's

16  complaints.  Id.  The ALJ also noted that plaintiff has failed to report to the emergency room for

17  treatment of her migraine headaches.  Id.  The evidence in the record also reveals that plaintiff

18  has failed to comply with her physical therapy routine, and nothing more than conservative

19  treatment been recommended for her.  AT 104.

20    In addition, the report of a fraud investigator assigned to plaintiff's case also casts

21  doubt on plaintiff's credibility.  The fraud investigator observed plaintiff walk to her front door

22  with a slight limp, but without difficulty and without her walker.  AT 127.  In fact, the fraud

23  investigator stated that plaintiff did not know how to operate or set up her walker.  Id.  This

24  difficulty using, opening, and closing the walker came despite plaintiff's assertions that she uses

25  a walker.  AT 72, 90.

26    The investigator reported that plaintiff had little difficulty getting out of her car.

5

AT 127.  This observation contradicted plaintiff's claims that she needs help getting in and out of her car.  AT 72.  The investigator also noted that plaintiff was able to bend without difficulty, AT 127, despite plaintiff's assertions that she could not perform that task without help, AT 72.

The factors considered by the ALJ were all valid and supported by the record. The medical evidence considered by the ALJ, as well as the report of fraud and the observations contained therein, were a permissible basis upon which to assess plaintiff's credibility and are supported by substantial evidence.  The ALJ's credibility determination will not be disturbed.

b. There was not Substantial Evidence in the Record to Support the ALJ's Discrediting of Plaintiff's Treating Physician.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81 F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence.  Lester, 81 F.3d at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory,

1  minimally supported opinion rejected); <u>see</u> <u>also</u> <u>Magallanes</u>, 881 F.2d at 751.  The opinion of a

2  non-examining professional, without other evidence, is insufficient to reject the opinion of a

3  treating or examining professional.  <u>Lester</u>, 81 F.3d at 831.

4          In his findings, the ALJ gave no weight to the medical opinion of treating

5  physician, Dr. William Kelly.  AT 19.  In addition, the ALJ gave no weight to examining

6  physician, Dr. Barbara Griffiths.  <u>Id.</u>  The ALJ cited numerous factors to support his

7  determination.  While numerous, these factors do not support a conclusion that the medical

8  opinions of Dr. Kelly and Dr. Griffiths' should be accorded absolutely no weight.

9          In weighing the credibility of Dr. Kelly, the ALJ gave seven reasons for his

10  assessment.  The ALJ noted that 1) there were no corroborating records from Dr. Kelly in the

11  file; 2) Dr. Kelly had not seen plaintiff "in quite some time" and that he did not recommend

12  further care or surgery; 3) Dr. Kelly's opinion was not supported by clinical findings or

13  radiological studies; 4) the opinion is refuted by another examining physician and a non-

14  examining physician; 5) the source of plaintiff's pain was cited by Dr. Kelly as abdominal laxity,

15  rather than degenerative disk disease; 6) there is no corroboration of Dr. Kelly's diagnosis by

16  radiological studies or laboratory testing; and 7) Dr. Kelly's assessment is contrary to the

17  comprehensive neurological examination contained in the record.

18          In addition, the ALJ stated that Dr. Griffiths' opinion was undermined by six

19  factors.  AT 19.  These factors included that 1) Dr. Griffiths was a one time examiner who did

20  not review any medical records prior to her assessment; 2) Dr. Griffiths placed an inordinate

21  amount of reliance on plaintiff's subjective complaints of pain; 3) Dr. Griffiths' findings are at

22  odds with the scant medical evidence in the file and lack the need for surgery; 4) other medical

23  opinions contradict Dr. Griffiths'; 5) no further medical care was recommended; and 6) Dr.

24  Griffiths' opinion is contradicted by the neurological examination contained in the record.

25          While some of the ALJ's conclusions are supported by evidence, or the lack

26  thereof, in the record, many are not.  Furthermore, several of the stated bases for discounting the

1   opinions of Dr. Kelly and Dr. Griffiths are simply not defensible in light of the actual treatment

2   provided by the doctors or the purposes for their examinations.  Given the questionable findings

3   by the ALJ, it cannot be said that substantial evidence supports his conclusions.

4           Dr. Kelly stated that he had been treating plaintiff for 10 years and that it was his

5   opinion that plaintiff suffers from degenerative arthritis, osteoarthritis, lumbar spine pain with

6   muscle spasms and frequent migraine headaches.  AT 160.  As a result of his diagnosis, Dr. Kelly

7   had prescribed a wheelchair for plaintiff.  Id.  Furthermore, it was his opinion that plaintiff's

8   condition was permanent.  Id.

9           Dr. Kelly gave this opinion on February 24, 2004, less than two months prior to

10  the hearing before the ALJ.  Furthermore, Dr. Kelly's notes, while limited, show that he last saw

11  plaintiff on March 29, 2004, just six days prior to the hearing and less than one month prior to

12  the ALJ's ruling.  Any contention by the ALJ that Dr. Kelly had not seen plaintiff "in quite some

13  time" is not supported by the facts in the record.

14          Dr. Griffiths' assessment occurred in December 2002 and was, as noted in her

15  report, "a comprehensive **ORTHOPEDIC EVALUATION** performed at the request of the

16  Disability and Adult Program Agency and Janice Sharpe, Quality Analyst." (emphasis in

17  original)  AT 119.  As Dr. Griffiths' examination was performed at the request of government

18  officials, and was intended for a specific, evaluative purpose, it cannot be chided for the fact that

19  it was a one time assessment.  In this regard, the ALJ's characterization of Dr. Griffiths'

20  evaluation of plaintiff was not correct.

21          As noted by the ALJ, Dr. Griffiths relied upon the subjective complaints of

22  plaintiff in her evaluation.  However, the ALJ's conclusion that Dr. Griffiths placed "an

23  inordinate amount reliance upon [plaintiff's] self-serving subjective statements" is not supported

24  by Dr. Griffiths' own notes.  Dr. Griffiths stated that her evaluation was based upon a physical

25  examination and her observations.  AT 121.  During that examination, she fully assessed plaintiff

26  through a hands-on evaluation of her neck, abdomen, back, and upper lower extremities.  It is

8

1    clear from her report that Dr. Griffiths' assessment was the result of substantially more than just
2    the subjective statement of plaintiff.

3            Furthermore, the absence of extensive medical records does not provide the
4    substantial evidence necessary to discredit the opinions of Dr. Kelly and Dr. Griffiths.  Indeed,
5    where medical evidence is lacking, the ALJ has a duty to develop the record to ensure plaintiff's
6    interests are considered.  Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983); see also, Driggins
7    v. Harris, 657 F.2d 187, 188 (9th Cir. 1981)(duty to develop the record exists even when plaintiff
8    is represented).[2]  There is no evidence in the record to suggest Dr. Kelly has misstated his
9    relationship to plaintiff.  Furthermore, Dr. Griffiths noted several times in her report that she was
10   not able to review plaintiff's records, properly qualifying the nature and extent of her opinion.

11           The ALJ also placed significance in the fact that neither doctor recommended
12   follow-up care or surgery.  This statement is not supported by the facts.  As evidenced by his
13   limited notes in the file, Dr. Kelly saw plaintiff one month after he prepared his opinion
14   regarding plaintiff's disability.  AT 159.  In addition, Dr. Kelly prescribed an electric wheelchair
15   for plaintiff.  AT 160.  Furthermore, Dr. Griffiths recommended x-rays of plaintiff's joints for
16   evaluation as well as daily anti-inflammatory medication for pain relief, thyroid function testing,
17   and stated that plaintiff should consult with her primary care physician regarding her headache
18   management.  Id.[3]

19           It is not apparent in the ALJ's findings how the failure to recommend surgery
20   discredits the opinion of either Dr. Kelly or Dr. Griffiths.  Both doctors either continued to see

21

22           [2]Plaintiff bore the burden of proving disability.  Johnson v. Shalala, 60 F.3d 1428, 1432
23   (9th Cir. 1995).  In meeting this burden, plaintiff must present "complete and detailed objective
     medical reports of her condition from licensed medical professionals."  20 C.F.R.§§404.1512(a)-
24   (b).  Given his 10 year relationship with plaintiff, the failure of the record to contain a more
     complete picture of Dr. Kelly's treatment of plaintiff is curious.

25
26           [3]It appears plaintiff followed this advice as she met with Dr. McIntire approximately two
     months later.

1    plaintiff or recommended courses of action to treat her symptoms.  The importance of surgery to

2    any evaluation of plaintiff's pain is not evident in the record and appears to be the improperly

3    inserted medical judgment of the ALJ.

4            The ALJ also stated that Dr. Kelly's and Dr. Griffiths' opinions were refuted by

5    another examining physician and a non-examining physician.[4]  However, this statement is only

6    partially true.  In his assessment, examining neurologist, Dr. Steve McIntire, opined that there

7    was no neurological basis upon which plaintiff was limited.  AT 150.  In fact, Dr. McIntire

8    inserted a hand-written note into his Social Security form HA-1151, "Medical Source Statement

9    of Ability to do Work-Related Activities (Physical)," that plaintiff's absence of any lifting,

10   carrying, standing, or walking restrictions were "not on a neurological basis."  AT 151.

11           Because it is limited in scope, this medical conclusion carries far less weight than

12   the ALJ ascribes to it.  Limited to neurological impairment, it provides no foundation upon

13   which to contradict the orthopedic difficulties of plaintiff described by Dr. Kelly and Dr.

14   Griffiths.  Indeed, in her report, Dr. Griffiths states expressly that her evaluation was orthopedic

15   and "not meant to be and must not be construed as a complete physical examination for health

16   purposes."  AT 124.  Furthermore, Dr. McIntire's does not refute the fact that plaintiff suffers

17   from migraine headaches, but rather, states only that they may be exacerbated by her pregnancy

18   and that her ability to perform work is not limited by them.

19           When the evidence is properly evaluated, what is left to discredit the opinions of

20   the treating and examining physician is the partially contradictory opinion of Dr. McIntire; the

21   contradictory conclusion of a non-examining physician, and a notable absence of radiological

22   examination, laboratory tests, and other objective medical information to confirm plaintiff's

23   complaints.  Furthermore, it appears as if the ALJ utilized his credibility assessment to bolster

24

25           [4]It should be noted that the neurological consult cited by the ALJ as a contrary opinion
     and referenced by him as reason number four to place no credit in the medical opinions of Dr.
     Kelly and Dr. Griffith is the same examination referenced in the final reason; reason number 7
26   for Dr. Kelly and reason number 6 for Dr. Griffiths.

1    the opinion of the non-examining physician.  These reasons do not rise to the quantum of specific

2    and legitimate justifications originally put forth by the ALJ.  As a result, there is not substantial

3    evidence in the record to support the ALJ's weighing of the medical opinions in this case.

4            There are contradictory opinions in the record.  As noted above, Dr. McIntire's

5    assessment of the disabling nature of plaintiff's migraines contradicted Dr. Kelly's opinion.  AT

6    150.  Furthermore, the non-examining physicians with the State Agency concluded, based upon

7    plaintiff's medical history and possible evidence of malingering, that she could lift 20 pounds

8    occasionally and 10 pounds frequently; that she was capable of a walking, standing, and sitting

9    for six hours in an eight hour day; and that there were no limitations with regards to pushing and

10   pulling.  AT 135.  The only restriction was that she should limit her kneeling.  AT 136.  This

11   assessment is contrary to the opinions of Dr. Kelly and Dr. Griffiths

12           The opinion of the non-examining physician with the State Agency placed great

13   weight in the fact that the fraud investigation stated that plaintiff may not have been as limited as

14   she reported.  AT 78.  With regard to his ultimate assessment, the ALJ mirrored the opinion of

15   the State Agency, finding that plaintiff has the residual functional capacity to perform light work.

16   AT 19.  Light work is defined as work that "involves lifting no more than 20 pounds at a time

17   with frequent lifting or carrying of objects weighing up to 10 pounds," and "a good deal of

18   walking or standing, or when it involves sitting most of the time with some pushing and pulling

19   of arm and leg controls."  20 C.F.R. 404.1567(b).

20           The ALJ's finding that plaintiff is capable of light work mimics the opinion of the

21   non-examining physician with the State Agency.  As such, it appears as if the ALJ implicitly

22   incorporated their credibility assessment in his evaluation of the medical evidence.  In and of

23   itself, such a result was not error.

24           Credibility determinations do factor into evaluations of medical evidence.  Webb

25   v. Barnhart, 433 F.3d 683, 688 (9th Cir. 2005); see e.g. Batson v. Comm'r of Soc. Sec. Admin.,

26   359 F.3d 1190, 1195 (9th Cir. 2004).  In the absence of clinical findings, the ALJ noted that

subjective complaints formed the basis for some of the medical opinions in the record.  When there are legitimate reasons to doubt those complaints, the opinions upon which they are based are also questionable.  See Morgan v. Comm'r of Soc. Sec. Admin., 169, F.3d 595, 602 (9th Cir. 1999)("A physical opinion of disability 'premised to a large extent upon the claimant's own accounts of [her] symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'" (quoting Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989))).

Furthermore, conclusory opinions may also be discounted.  See Meanel, 172 F.3d at 1113.  The absence of any medical records to support his findings, or objective evidence from other health care providers casts doubt upon the assertions of Dr. Kelly.  See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190,  1195 (9th Cir. 2004)(giving minimal weight to treating physicians opinions when clinical findings are not present); Young v. Heckler, 803 F.2d 963, 968 (9th Cir. 1988)(discrediting medical opinion of treating physician who had prior relationship with claimant where only report in record was in conclusory form).  When contradicted, the treating physician's opinion is entitled to controlling weight only when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques[.]" 20 C.F.R. §416.927(d)(2).  Without more to support his statements about the extent of plaintiff's disability, the conclusions drawn by Dr. Kelly may be discredited in light of other opinions and evidence in the record.

Specific and legitimate reasons do exist for discrediting the opinion of the treating and examining physician.  However, in light of the conflicts between the ALJ's findings and the evidence in the record that are noted above, it cannot be said that there is substantial evidence in the record to conclude that no weight should be afforded the opinions of Dr. Kelly and Dr. Griffiths.  The numerous problems associated with the ALJ's complete disregard for the opinions of Dr. Kelly and Dr. Griffith cast sufficient doubt upon his conclusion and require remand.

c.  In Light of the his Weighing of the Medical Evidence, the ALJ's did not Properly Consider the Combination of Impairments During the Sequential Analysis.

1    _____Step two of the sequential analysis requires the ALJ to consider whether the

2    plaintiff has a medically severe impairment, or combination of impairments.  20 C.F.R.

3    404.1520(c).   In making this determination, the ALJ must consider all of the evidence in the

4    record, including properly weighed medical evidence.  See 20 C.F.R. §404.1529 (requiring

5    consideration of medical evidence as described in 20 C.F.R. §404.1513).  This determination

6    regarding any combination of impairments continues throughout the sequential analysis.  Given

7    the ALJ's failure in this case to provide specific and legitimate reasons for discrediting the

8    medical opinions of the treating and an examining physician that were supported by substantial

9    evidence in the record, it cannot be said that the ALJ properly considered the combination of

10   impairments during the sequential evaluation.  In this regard, remand is also appropriate.

11        On remand, the ALJ should further develop the record by acquiring a complete

12   medical history of plaintiff from Dr. Kelly, if available.  In addition, the ALJ should properly

13   weigh the opinions of Dr. Kelly and Dr. Griffiths.  Finally, in light of the ultimate evaluation of

14   the evidence, the ALJ should determine whether an impairment or combination of impairments

15   exist which meet or medically equal a listing.  If so, plaintiff is presumed disabled and benefits

16   should be awarded.  If not, the ALJ should determine the residual functional capacity of plaintiff

17   and proceed as necessary based upon that determination.

18        For the foregoing reasons, this matter will be remanded under sentence four of 42

19   U.S.C. § 405(g) for further development of the record and further findings addressing the

20   deficiencies noted above.

21   /////

22   /////

23   /////

24   /////

25   /////

26   /////

1    Accordingly, IT IS HEREBY ORDERED that:

2    1.  Plaintiff's motion for summary judgment is denied;

3    2.  The Commissioner's cross motion for summary judgment is denied; and

4    3.  This matter is remanded for further proceedings consistent with this order.

5    DATED: May 10, 2006.

6

7                    UNITED STATES MAGISTRATE JUDGE

8

9    ggh13
     Bacsi.ss.wpd
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26